UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **MATTHEW STANDISH** | Case No. 18-45101-tjt<br>Chapter 7 |
| Debtor | Hon. Thomas J. Tucker |

**K. JIN LIM, TRUSTEE**

    Plaintiff,

Adv. Pro. No. 19-_____-tjt

vs.

**MATTHEW STANDISH**

    Defendant.

## COMPLAINT

Plaintiff K. Jin Lim, Trustee, by and through her counsel, Clayson, Schneider & Miller, P.C., states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

2. This matter is a core proceeding under 28 U.S.C. § 157.

3. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1408 and § 1409.

4. This adversary proceeding is brought pursuant to Fed. R. Bankr. P. 7001 to seek relief pursuant to 11 U.S.C. § 727.

## STATEMENT OF FACTS

Plaintiff repeats and incorporates all of the allegations in the preceding paragraphs, and says:

5. Debtor Matthew Standish ("Defendant") filed a voluntary petition for Chapter 7 bankruptcy on April 9, 2018.

6. K. Jin Lim ("Plaintiff") is the duly appointed Chapter 7 trustee of the estate of the Defendant.

7. Defendant's Schedules indicate that he is a "Data Scientist", and that he has no current income. *See* Schedule I.

8. Defendant holds a degree in business and has a Master's Degree in Business Administration/eCommerce.

9. Despite the Defendant's credentials and experience, he claims that he has been unable to secure employment since 2017.

### Divorce and Support Debts

10. Defendant is involved in ongoing litigation concerning a 2016 divorce from his ex-wife and creditor, Jennifer Standish, including arrearage in child support and alimony.

11. Jennifer Standish is a creditor of this estate, and she has alleged that Defendant has hidden and/or moved assets, and manipulated his income in an effort to avoid payment of support obligations.

12. According to information provided by Jennifer Standish, Defendant repeatedly tried to avoid the support payments, requiring at least four hearings on motions for contempt.

13. Defendant was found in contempt of Court, and was arrested on a bench warrant in December of 2017, upon which he immediately came up with $18,500.00 to pay the bond.

14. According to Jennifer Standish, Defendant also paid nearly $19,000.00 to quash an earlier bench warrant for contempt.

### Dealings with Motorwerks, LLC

15. Defendant initially listed a 2016 Porsche 911 GTS (the "Porsche") on his Schedules and valued the luxury vehicle at $84,000.00.

16. Creditor Motorwerks, LLC ("Motorwerks") has a judgment against the Defendant concerning certain repairs that were done on the Porsche in or around May of 2016.

17. Defendant received insurance proceeds that were supposed to go to Motorwerks for repairs.

18. Instead of paying the funds to Motorwerks, Defendant pocketed the funds.

19. Defendant returned to Motorwerks on July 2, 2016 in his Jeep sports utility vehicle to retrieve the vehicle, and was informed of the outstanding balance.

20. On July 2, 2016, Defendant informed Motorwerks that he needed to load things from the Jeep into the Porsche and that he would be inside shortly. When Motorwerks' agent went inside of the shop, Defendant hastily sped away without paying and thereafter avoided payment of the debt, leaving the Jeep behind.

21. Motorwerks was unable to maintain a mechanic's lien on the Porsche due to the Defendant removing it from the shop.

22. Defendant later returned after business hours to secretly retrieve the Jeep, driving over a fence to remove it from the lot.

23. Defendant moved the Porsche to a number of locations in Michigan before shipping it to the State of Washington in order to prevent collection efforts.

24. At the Defendant's § 341 Meeting of Creditors, Defendant testified that he *did not* drive the Jeep off of the lot and that he *did not* damage a fence.

25. Motorwerks has video surveillance footage of Defendant entering their lot to retrieve the Jeep after business hours.

## Omissions and Misrepresentations

26. At the Defendant's § 341 Meeting, the Defendant agreed that his addresses needed to be updated on SOFA, but that he'd been living with his parents for "a year and a half".

27. Defendant's initial Statement of Financial Affairs ("SOFA") indicated that:

    a. Defendant's only address in the last three years besides his current address was 2400 Gillham Ave., West Bloomfield, MI. *See* Defendant's SOFA ¶ 2;

    b. Defendant had no income in 2018, $89,000.00 in 2017, and $20,676.00 in 2016. Id., at ¶ 4.

    c. Defendant owned a business named "IDINTERACT, INC." that operated from 2012-2015, and no other businesses.

28. On June 29, 2018, Trustee sent Defendant a document request seeking production of a series of records relating to the Defendant's financial affairs.

29. Defendant did not comply with the June 29, 2018 letter, and on August 1, 2018 Plaintiff and Defendant stipulated to entry of an order requiring production of the records within 14 days. Lead Case Docket No. 37.

30. The August 1, 2018 Stipulated order for production required the Defendant to produce:

    a. Any and all Federal or State income tax returns for the years 2015-2017 filed by the Defendant, or any company owned or operated by the

Defendant, to the extent not already provided, including, but not limited to 2015 personal State Tax Returns.

b. Financial account statements, cancelled checks, and ledgers for any accounts, wherever held, dated January 1, 2016-present;

c. Statements for Chase credit card account ending in 5254 for the period of January 1, 2016-present;

d. Any and all judgments of divorce involving the Defendant dated January 1, 2016-present;

e. Certificate of title for 2016 Porsche 911 listed on schedules, as well as any documents indicating the validity of the asserted security interest in said Porsche, as well as a full accounting of the disposition of any insurance claim payment received concerning said vehicle;

f. Business records dated January 1, 2016-present which reflect assets, liabilities, gross receipts, and expenses for any business in which the Defendant owns or has owned an interest, including bank statements of those businesses from all banks or other financial institutions.

g. A complete inventory of property in storage unit listed on Schedule G;

h. Any and all applications for credit furnished by the Defendant dated January 1, 2016-present;

    i. Any and all personal financial statements furnished by the Defendant, including any attestations made in Court proceedings as to Defendant's financial status, dated January 1, 2016-present;

    j. Any and all documentation concerning Defendant's potential claim for sexual harassment as discussed at Defendant's § 341 Meeting of Creditors;

    k. Documentation concerning any payments made outside the ordinary course dated January 1, 2016-present; and

    l. Proof of Defendant's income for the period of January 1, 2016-present.

31. Defendant has still only partially complied with the order.

32. At a September 12, 2018 Fed. R. Bankr. P. 2004 examination, the Defendant was questioned about records provided, outstanding records, and the attestations on the Defendant's schedules and SOFA.

33. At the September 12, 2018 examination, the Defendant testified that:

    a. Defendant had not provided any information concerning a second divorce with a Janie M. Kraemer that occurred in the State of Michigan in 2017, despite being ordered to produce "any and all judgments of divorce dated January 1, 2016-present";

    b. Defendant had produced an original judgment of divorce from Jennifer Standish dated October 24, 2016, but had failed to produce an amended final judgment of divorce from the same court dated October 26, 2016;

c. Defendant had not listed a business known as "Social Offer Squad, LLC" in his bankruptcy papers;

d. Defendant had not listed on his SOFA certain addresses he has lived at in the 3 years preceding the filing, including 34626 Southeast Swenson Drive, Snoqualmie, WA, 18707 Southeast Newport Way, Issaquah, WA, and 1150 Bangor Rd. in Waterford, MI;

e. Defendant's income figures on SOFA were not correct when compared to Defendant's tax returns, as Defendant listed income as $89,000.00 in 2017 (correct income is at least $199,222.00), and 2016 income of $20,676.00 (correct income is at least $54,233.00);

f. Defendant incorporated, but failed to list in his bankruptcy papers, another business by the name of "Social Offer Squad, LLC"; and

g. Defendant stated that he "could not recall" what happened to IDInteract's business records, and that they may be in the possession of his accountant.

34. The amended divorce judgment dated October 26, 2016 indicated that the Defendant had been awarded two boats, including two Yamaha boats with trailers. When asked about the boats at the September 12, 2016 examination, the Defendant first claimed that "[t]he boats never existed", and again insisted "[t]hey never existed", before later admitting that he had owned one of the boats, which sunk, and that he had received insurance proceeds of $3,000.00.

35. At the September 12, 2018 examination, Defendant was also asked to specifically account for the disposition of certain withdrawals and checks from his bank accounts occurring in 2017 in the combined amount of over $75,000.00, but he was unable to do so with any particularity whatsoever.

36. Following the exam, the Defendant was asked to account for the transactions described above, as well as of tax refunds from 2015 and 2016 in the amount of $11,000.00, and the insurance proceeds received in the amount of $3,000.00 from the loss of Defendant's boat, above. No records concerning these transactions have been produced.

37. Defendant has arranged for records to be provided by accountant Teresa Muzzuco, but the records are limited, and do not account for the supposed winding up of IDInteract.

38. The examination was adjourned in order for the Defendant to produce outstanding records and additional records requested at the examination.

39. Defendant has been asked to agree to a continuance of his examination, most recently on February 6, 2019, but the Defendant will not agree.

40. Even after the Defendant was given a chance to review his financial affairs, and to identify the transactions with specificity, his only initial response was that such charges were "a combination of Alimony, Child Support, and Private School Education at Cedar Park paid in Cashier's Checks or Money Orders…",

and that "in 2017, $92,500.00 was paid less Cedar Park Christian Private School Payments of an estimated ~$23,000.00 per year including children's activities and after school care".

41. Defendant did not initially list in his bankruptcy papers a claim against former employer Teradata for harassment despite the Defendant having filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in November of 2017.

42. On or around July 16, 2018 Defendant received a letter from the EEOC informing him of a right to bring suit directly against Teradata within 90 days.

43. Defendant did not immediately inform the Trustee of the right to sue (which had a running deadline to file), and that the Defendant had consulted with an attorney to pursue the claim after his bankruptcy filing.

44. In October of 2018, the Plaintiff discovered that the Defendant had been attempting to negotiate the claim against Teradata without the Plaintiff's knowledge.

45. In December of 2018, Plaintiff discovered that the Defendant had received an undisclosed reimbursement of expenses from Teradata on April 27, 2018 in the amount of $5,791.38; Defendant has refused to turn this amount over and a motion for turnover is pending.

46. Jennifer Standish denies the Defendant's explanation of the transfers, and asserts that most of the payments received were obtained via garnishment or in response to bench warrants.

47. Defendant filed amended schedules and a SOFA on October 24, 2018. Notable additions include:

   a. 100% interest in a business known as "Social Offer Squad, LLC";

   b. 100% interest in a business known as "Interactive Mobile Media, LLC";

   c. 100% interest in a business known as "Incremental Toast, Inc.";

   d. 2017 income of $199,222.00;

   e. 2016 income of $54,233.00;

   f. Possible claim for harassment against former employer Teradata;

   g. Possible claim against ex-wife for conversion;

   h. Pending lawsuit against ex-wife for defamation;

   i. Possible Cause of Action against a Neal Finerman for Legal Malpractice; and

   j. Past addresses during last three years of 1150 Bangor Rd., Waterford, MI, 2400 Gillham Ave.,West Bloomfield, MI, and 13501 NE 200th St., Woodinville, WA.

48. Defendant has produced checks from his Citizens Bank account that show Defendant had a listed address of 34626 SE Swenson Dr., Unit J 102, Snoqualmie, WA 98065, and paid checks to "Woodlands" as "rent" in May of 2017.

49. The "Woodlands" is an apartment complex located at the Swenson Dr. property above.

50. Other checks from the Citizens account later list Defendant's address as 18707 SE Newport Way, Issaquah, WA for checks paid in October of 2017.

51. The addresses on the checks described above contradict Defendant's testimony that he had been living with his parents since 2016; despite a number of amendments made by the Defendant, this has not been corrected.

52. Defendant has not produced any records whatsoever for Social Offer Squad, LLC, Interactive Mobile Media, LLC, and Incremental Toast, Inc.

53. Defendant has claimed inability to obtain the records described above, despite online access to his accounts, and his obvious sophistication with computers.

54. The Defendant's alleged inability to obtain records required the Trustee to issue subpoenas to various parties to obtain this information, which has caused the estate to incur expenses, and has delayed the Trustee's administration of this estate.

55. On January 28, 2019, Plaintiff received via subpoena response a copy of the Defendant's TD Ameritrade check in the amount of $14,939.80 made payable to the Defendant on December 12, 2017.

56. The $14,939.80 check was signed over to the Defendant's romantic partner, Patricia M. Anderson.

57. On February 7, 2019, Defendant provided a document attempting to account for certain large withdrawals, specifically including two $8,000.00 cash withdrawals occurring on November 16, 2017 and November 30, 2017, respectively, as well as the $14,939.80 check listed above.

58. The February 7, 2019 letter also claims that the $14,939.80 check was "[p]aid to Trisha Anderson for accounting services (apprx. $9,500.00) in determining amount owed by Teradata which led to payments by Teradata in the apprx. amount of $54,291.00 and for use of office space in Patricia Anderson's condominium (apprx. $5,500.00)". No explanation for this transaction had been provided for, or disclosed, until that point.

59. Defendant has stated that the November 16, 2017 withdrawal was paid to attorney Neal Feinerman for attorney fees, and $6,000.00 was paid from the November 30, 2017 withdrawal.

60. Attorney Neal Feinerman has informed the Trustee that neither of the alleged November 2017 payments, above, were paid by the Defendant.

61. Creditor Gerald McMorrow's $497,949.00 claim, listed by the Defendant as "collection" is a claim that is based in part on violations of the Washington State Securities Act, and asserted that the Defendant had personally violated that Act "…by making untrue statements of material fact and/or omitting to state material facts regarding IDInteract in connection with the offer and sale of shares of IDInteract stock to McMorrow…", and that said "…misstatements and omissions were part of a device, scheme, and/or artifice to defraud McMorrow…".

## GENERAL ALLEGATIONS

62. Defendant has intentionally failed to maintain employment to avoid payment of child support, alimony, and other support obligations, and to appear to be indigent.

63. Defendant has intentionally misrepresented his financial affairs in an attempt to mislead the Plaintiff, the Defendant's creditors, and this Court.

64. Defendant is not an "honest and unfortunate" debtor, but is instead using this bankruptcy to unjustly prejudice his creditors.

65. Defendant has not been truthful and cooperative in producing records and testimony to fully account for his financial affairs.

66. Defendant's failure to make proper disclosure has hampered the Trustee's investigation and the Trustee's ability to administer assets of this estate. The

information sought by the Trustee may lead to further grounds to support denial of discharge.

## COUNT I-DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2).

Plaintiff repeats and incorporates all of the allegations in the preceding paragraphs, and says:

67. The Defendant transferred the sum of $14,939.80 to insider Patricia M. Anderson on or around December 12, 2017 with the intent to hinder, delay or defraud Defendant's creditors, specifically including Defendant's ex-wife Jennifer Standish and the Courts of the State of Washington, and it was not in exchange for services or rent.

68. The Defendant, with intent to hinder, delay, or defraud the Trustee of this estate, concealed his interest in the $5,791.38 received from Teradata on April 27, 2018.

69. The Defendant concealed the Porsche and its location in an attempt to hinder, delay or defraud creditor Motorwerks, LLC.

70. Defendant withdrew $16,000.00 in November of 2017, and has misrepresented to the Plaintiff where these funds went.

71. Defendant has removed and/or transferred these funds with actual intent to hinder, delay, or defraud the Defendant's creditors, and the Plaintiff.

72. The Defendant committed other unascertained transfers with actual intent to hinder, delay, or defraud Defendant's creditors.

**WHEREFORE**, Plaintiff prays that this Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2), and grant whatever further relief that this Court deems appropriate.

## COUNT II: DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(3)(A)

Plaintiff repeats and incorporates all of the allegations in the preceding paragraphs, and says:

73. Defendant has failed to keep records relating to transfers from his bank accounts in the combined amount of over $75,000.00.

74. Defendant has failed to keep records relating to his business transactions.

75. Defendant failed to keep or maintain financial records related to IDInteract and its disposition.

76. Under 11 U.S.C. § 727(a)(3), Defendant has concealed, destroyed, or failed to keep or preserve recorded information, including books, documents, records, and papers from which the Defendant's financial condition or business transactions might be ascertained.

**WHEREFORE**, Plaintiff prays that this Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3), and grant whatever further relief that this Court deems appropriate.

### COUNT III-DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(4)

Plaintiff repeats and incorporates all of the allegations in the preceding paragraphs, and says:

77. The Defendant has knowingly and fraudulently failed to make proper disclosure throughout his testimony, bankruptcy schedules, and SOFA, and has intentionally misrepresented his property, income, and residences.

78. Defendant has failed to provide information in his possession, custody or control.

79. The Defendant has failed to provide a complete and accurate account of his residential addresses in an attempt to avoid compliance with Court ordered payment of child support, alimony, and other support, and to avoid collections.

80. The Defendant failed to properly disclose certain claims and/or property of this estate until after discovery by the Trustee.

81. The Defendant attempted to administer a claim of the estate without disclosing the asset in his Schedules.

82. The Defendant made a false oath by claiming that two Yamaha boats he had been awarded in a divorce "never existed".

83. The Defendant made a false oath by claiming he did not return to Motorwerks' facilities to retrieve his vehicle.

84. The Defendant has made the aforementioned false oaths with the intent to mislead the Plaintiff and this Court.

85. Under 11 U.S.C. § 727(a)(4)(A), the Defendant has knowingly and fraudulently, in connection with this case, made a false oath or account.

86. Under 11 U.S.C. § 727(a)(4)(D), Defendant has withheld from the Plaintiff recorded information, including books, documents, recordings, and papers relating to his property or financial affairs.

**WHEREFORE**, Plantiff prays that this Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4), and grant whatever further relief that this Court deems appropriate.

### COUNT IV-DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(5)

Plaintiff repeats and incorporates all of the allegations in the preceding paragraphs, and says:

87. Under 11 U.S.C. § 727(a)(5), The Defendant has knowingly and fraudulently failed to explain satisfactorily, before determination of denial of discharge, a loss of assets or deficiency or assets to meet his liabilities.

**WHEREFORE**, Plaintiff prays that this Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(5), and grant whatever further relief that this Court deems appropriate.

### COUNT V-DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(6)(A)

Plaintiff repeats and incorporates all of the allegations in the preceding paragraphs, and says:

88. The Defendant has refused to comply with this Court's August 1, 2018 order for examination (Lead Case Docket No. 37), as he has failed to provide a number of the records that are in his possession, custody, or control.

89. Defendant has not produced any records regarding any of his businesses.

90. Under 11 U.S.C. § 727(a)(6)(A), the Defendant has refused, in this case, to obey a lawful order of this court.

**WHEREFORE**, Plaintiff prays that this Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(6), and grant whatever further relief that this Court deems appropriate.

Respectfully submitted,

Dated: February 11, 2019

**CLAYSON, SCHNEIDER & MILLER, P.C.**
*/s/ Peter F. Schneider*
Peter F. Schneider (P-75256)
Attorneys for Plaintiff
645 Griswold St., Ste. 3900
Detroit, MI 48226
pete@claysonschneidermiller.com